Good morning. May it please the court opposing counsel. As the court is aware, I am the attorney for Jose Valenzuela. Mr. Valenzuela appeals a four-level enhancement in his sentence after his conviction for felony in possession of a firearm. The district court awarded the enhancement for his possession of firearms in connection with another felony offense. Under the plain meaning of the guidelines at the time Mr. Valenzuela possessed the firearms, that plain meaning of the guideline dictates the conclusion that he did not possess them in connection with another felony offense. By the way, do we apply the 2006 or the 2005 guidelines? The 2005 guidelines. So it's 2005 guideline. I have trouble remembering these numbers, but 2K2.1E5, is that what it is? Yes. That guideline, the 2005, explicitly excludes possession or weapon trafficking crimes from the firearm offenses that require the enhancement. Application note 15 tells us specifically another felony offense is not a firearm possession or trafficking offense. So the government argued with the district court because Mr. Valenzuela sold one of the firearms, that somehow requires the court to award him the four-level enhancement, must fail, based on that guideline section. Now, there was an amendment passed that took place. It was – went into effect in November 2006. He had already been sentenced. The conduct occurred in 2004. So that's a violation of ex post facto. Now, go ahead. He just says it's a clarifying amendment. Well, you know, it's really – it's not a clarifying amendment. If you – first of all, if you look at all the reasons for the amendments in the commission, when they formulate an amendment, they give the court a heads-up why they passed the amendment. In this particular amendment, they didn't call it a clarification. They said there was a split in the circuit – circuits, I should say. Now, they specifically added a new offense where the guideline enhancement applies, burglary as well as drug trafficking offense. That was precluded before that. So I mean, it's a substantial change in the guideline. You can't call it a clarification. The commission itself doesn't call it a clarification. Counsel, may I ask you why selling the firearm would not constitute a separate offense that would be eligible for enhancement? Well, under the case law, the vast majority of the case law, and particularly the cases the Court alerted us to, simple possession of it without some type of active use of it, just simple passive possession, the commission considered that. If you look at Application Note 15, the second – Is selling the vehicle – I mean, selling the firearm, in your view, passive possession? Well, just simply possession of it is a passive use of it. What about selling it to someone else? Well, they specifically mentioned that in the guideline, in the commentary. And they said, we don't include it in that type of conduct. What's the strongest case you think for your argument that the enhancement does not apply? Well, the Court alerted the parties to it. It's the English case from the Eighth Circuit. I mean, that's directly on point. First of all, English was a felon. He sold a number of firearms to another individual. And the Court – the district court applied the enhancement. The government argued for the enhancement in the district court. But on appeal, they conceded that was error, that because of Application Note 15, the enhancement did not apply. But there the government argued, just like the government did in this case, in the circuit there, that because the firearms were stolen, that emboldened somehow. But the Eighth Circuit in English said no. How do you distinguish the contrary authority? Well, the government – the contrary authority is a number of cases where the Court of other circuits, not district, have said that when a burglary occurs, you imply the enhancement. Most of the cases in the Seventh and Eighth Circuits, it does not apply. I think the important case that the Court alerted us to is the Lloyd case. And that is where the enhancement was applied. But in that case, there was more than mere possession of the explosive device. In Lloyd, he was convicted of possession of the explosive device, but he actually used it, tried to ignite it. It didn't go off, fortunately, but there was an attempt there. So it was more than just a passive – there was some type of distinct conduct with the firearm. In that case, it was his explosive device. And so that case fits us – facts in this case also and goes to show that the enhancement did not apply in this case. Counsel, what do you do with the language in English that said that the separate offense of possession of stolen property could support the enhancement? Well, not if the firearm itself is the stolen property. In English, the firearms themselves had been stolen. In the case here, they had been stolen. I think it's important for the Court to realize that the – But what language in English makes that distinction, that the property has to be something other than the firearms? I think that's the distinction that all the cases really draw, Your Honor. The gun is used in connection with another felony offense beyond the possession of the gun, because in most felony possession convictions, the person is violating another felony offense, a state crime of possession, or the case – the Iowa case where you have to have a permit to have a fire on if you're – so that's a violation. So what I find conceptually difficult here is this. He's got one gun, the gun found on the floor, like a pistol-gripped shotgun. That's, I guess, the firearm he's in possession of. It gets him the charge of felony possession of a firearm. But he's also sold a stolen firearm, you know, back so many miles earlier in the town of McDonald or whatever. So there are a couple of firearms involved. Right. And it seems like literally Application Note 15 says that a firearm trafficking offense can't be considered another felony for purposes of this enhancement. What I wonder is if there are two guns involved, should it be, you know – do we have to follow the note, or are there exceptions to that note? Well, if you look at the second sentence in that note, it addresses that. The Commission obviously concluded that there were going to be cases where the firearm was possessed with another firearm offense or an explosive offense, and they give the example of a defendant using or possessing a firearm to protect the delivery of an unlawful shipment of explosives. They do not tell us to go to this guideline. They say go to 5K2.6. Do you want to save a couple of minutes to respond to Mr. Edmonds? Okay. I will, Judge. Thanks. It's up to you. Go ahead, Mr. Edmonds. By the way, the panel, in its order, mentioned several extra-circuit authorities. You know, it may be that it would be helpful, in addition to your oral argument, if the panel gave each of you a chance to write a supplemental letter brief about that extra-circuit authority. So just think about that, and when you're done arguing, why don't you let us know if that would be helpful or not. Thank you very much, Your Honor. Good morning. Tom Edmonds, Assistant United States Attorney for Oregon, representing the United States in this case. May it please the Court. The simple facts in this case are that the defendant, Mr. Valenzuela, committed a burglary. He stole several firearms. He also stole other items of property. The record established at the court, district court level in the sentencing hearing, made that very clear, that he stole several firearms. He stole firearms-related equipment, including holsters. He stole a camcorder. He stole the victim's wallet out of the victim's house. All of that property was possessed, and then part of it was sold in the hour and a half that elapsed after the burglary had been committed. In fact, the defendant's admissions were that he drove 20 to 25 miles. He made two stops. And during all of that time, he had at his feet a pistol-grip shotgun that was loaded. That shotgun was one of the weapons that was stolen in the burglary, firmly established in the evidence, and he made a conscious choice to place that particular weapon at his feet. And, in fact, during the traffic stop involving Woodbroom Police, he reached towards that weapon, which availed the officers of their first inclination to look in that direction, see the pistol grip, get him out of the car, and seize the weapon afterwards. That weapon, in and of itself, had a threatening quality that I don't need to belabor. That's very clear from the record in the case. But the weapon, whether loaded or not, had the ability to potentially embolden the defendant's conduct of driving the distance he did, possessing and selling stolen property. In one of the circumstances that he admitted to, he sold a holster, an item that isn't a firearm. It's not a firearm's trafficking offense. I'd like to go to the English case, which counsel relies on heavily here, and say to the Court that the English case prescribed an elements-based analysis. It said that the only fair reading of the plain language of that application note was to look at the elements of the crime, and on the basis of the elements, to determine whether or not the offense was a firearms trafficking or a firearms possession offense. And it paid particular attention to the word offenses in that section. Which offense are we focusing on now? The offense of the burglary or the offense of selling the stolen gun? I think there are three offenses that are available to the Court to focus upon. The offense of burglary, and that's where the amendment, the clarifying amendment that I spoke to. It doesn't apply here. I believe that it does, Your Honor, because it clarifies. It's a significant change in the law. Well. It's to his detriment. Because clearly under that new change, he gets the four points. But the law is. No question about it. Case over. I suggest not, Your Honor, and I'd like to explain why, if I might. Under Morgan, which is the three-part test the circuit has prescribed for determining whether an amendment is clarifying or whether it's substantive, that particular test involved the third step, which was whether or not the explicit language of the amendment said it was to cure a circuit split. And that amendment in this case clearly does. I'm not asking this Court to apply that particular amendment. We don't have much of an argument under the new amendment to argue that he shouldn't get the four-point enhancement under the conduct it's involved in. I agree, Your Honor. But the application knows he has a credible argument that this was not in connection with another offense. Your Honor. So it's detrimental to him. It is detrimental to him in the sense that you are allowed as a court to view that judge Hagerty sentenced this case. And let me make my submissions clear. At the time that we sentenced the case, the government's position was that it was the possession and selling of stolen property that was the other offense. That did not preclude, however, the district court from having found that under the Armstead and Penney decisions, which were on one side of the split, that the mere fact that the defendant had committed a burglary and taken firearms allowed for the four-level enhancement. We did not ask the court to do that because we were. We did not. We believed our strongest argument was the possession and selling of stolen property. But nevertheless, Your Honor, Judge Hagerty could have said under Armstead and Penney, I find that he committed a burglary and he took firearms, and therefore under those cases, I conclude that their four-level enhancement is allowed. That was allowed and available to Judge Hagerty at the time of the sentence. And therefore, the amendment only clarifying the law doesn't put the defendant at a disadvantage. I think that's a tough argument. I appreciate that, Your Honor. Assume for a minute that we decided we had to put the amendment to the side. Yes, Your Honor. And all we're going to look at is 2K2.1B5 and the application note. What's the government's argument there that we could apply 2K2.1B5 either consistent with the application note or if there's any exception to following an application? Thank you, Your Honor. B5 simply asks whether it was used or possessed in connection with another felony offense. And the theory that we took at sentencing and that I've taken in the brief to the court is that the possession and selling of stolen property and offense, a clearly distinct felony offense under Oregon law, was committed by the defendant. He admitted to both those crimes and their elements. And on the basis of that offense, separate and distinct conduct occurring after the burglary where he's driving the 20 to 25 miles and he's in the process of selling property other than firearms in one circumstance and certainly protecting the property, the camcorder, the wallet, all of the other accoutrements that are in the vehicle, this case speaks very, very clearly when you consider Rutan and Palenco, which talked about a weapon potentially emboldening the defendant's conduct. In fact, in Palenco where the defendant was selling drugs, the court went into some description about that. Let me ask you this on this. So it's – as I understand it, what you just said was having taken the property in addition to guns. Yes, Your Honor. In fact, he admitted that he sold the holster down the line. Yes, Your Honor. That under Oregon law, there is a separate crime for possessing that stolen property, even though he's the thief? Yes, Your Honor. So he could be prosecuted for burglary.  And he could be prosecuted for possessing stolen property. Yes, Your Honor. Is that right under Oregon law? Yes, Your Honor. And for selling stolen property. And for selling stolen property. For all those things. There's taking. The taking is the underlying theft. Right, the underlying burglary, the breaking and entering, taking. Yes. Then possessing that separate stolen property, that is – forget the guns for a moment. Yes, Your Honor. The camcorder, whatever it was he took. Yes. That's a separate – he could have been charged for a separate offense with that. Yes, Your Honor, under 164.055. And then he sold the holster, and he could be charged with a separate offense for that. Correct, Your Honor. And do you have to show that having that pistol grip shotgun on the floor emboldened him in making that sale? Absolutely, Your Honor. This is right in line with Polanco, where the court said that a gun that was some distance away in the – while the defendant sold marijuana on the corner of the street, the Ninth Circuit said that that gun and that car potentially emboldened the defendant to protect his drugs, to enforce payment from his customers. This case speaks much louder than that case. This is a pistol grip shotgun that is inches away from his right hand that he can pick up and use in an offensive or defensive manner to protect his selling stolen property. He's dealing with other nefarious individuals who are willing to buy this property that's obviously stolen on the basis of his grounds. He refused to name the individuals who he sold it to. Jay, let me ask this. In Oregon law, there's an offense of selling stolen property. Yes. Is there a separate offense in Oregon law of selling firearms, like trafficking in weapons? I don't believe that there is under State law a specific offense of trafficking firearms. I couldn't answer that. Don't you have to have a permit under State law in order to sell a firearm? I'm sorry, Your Honor. Don't you have to have a permit under State law to sell a firearm? Well, you certainly have to have a license in Oregon to commercially sell firearms. An individual, private individuals can sell firearms between each other without much restriction in Oregon law. Okay. Well, if the elements in Oregon law of selling stolen property don't require the property to be a firearm, you sell any stolen property, it's a crime. Then does that application note apply when it says don't enhance for a firearms trafficking offense? I submit that this was not a firearms trafficking offense because the possession was for a broader category of property than simply firearms, and because the selling involved conduct that was not simply firearms, that this was not either a gun or a firearms possession or trafficking offense that involves a fall of the application note. I'd like to make one further point, that if the Court, for some reason, and I don't suggest that there is a reason to do this, were to find that the exclusion in application note 15 were to apply in that first sentence, I would commend the Court's attention to the second sentence, which is, however, where the defendant used or possessed a firearm or explosives to facilitate another firearms or explosives offense, an upper departure under 5K2.6 may be warranted. That was not mentioned by my opponent in his brief. And that raises the issue that if he were to find the exclusion, this case should then be remanded to the district court for a determination of whether that lies. I'm not suggesting that's the course of action the Court should take. But we couldn't apply that other exception. That would be for the district court. Well, I believe the Court could affirm a sentence on that basis, but it is a discretionary exercise, Your Honor. If we interpreted the note adversely to the government, if we interpreted the application note contrary to the government's position on the first sentence, we could remand them to consider the second sentence. I think you should. And there are a couple of reasons why you should. One, because the defendant can't benefit from the application note as a shield and not accept the full consequence of what it says. And furthermore, this exclusion argument that counsel now raised on appeal of application note 15 was never addressed to the district court during the sentencing, either in the defendant's sentencing letter or in his oral submissions to the Court. This is the first time this has been addressed. We have precedent. Am I correct that we have Ninth Circuit or Supreme Court precedent saying that we're supposed to apply these application notes, that they're – they have legal effect like the government? Well, the Supreme Court authority, Your Honor, in Stinson says that they're authoritative and to be read in conjunction with the guideline itself. And, of course, 2K2.B5 has never changed even in the course of the amendments. Right. Okay. I think we'd better bring this to a conclusion. Thank you very much. Thank you. Okay. Mr. Needham. Yes, Judge. Please proceed. Thank you. And we'll give you an extra minute if you need it because you let the government go. The argument that Mr. Valenzuela possessed a firearm to somehow facilitate or embolden his possession of other stolen items beyond the firearms fails because there's nothing in the record that that was a felony offense, the holster that was stolen and the pan quarter and the other miscellaneous items. It has to be over a dollar threshold amount under Oregon law and Federal law. And there's no record in the court, in the district court, about that – the amount of that. Two hundred dollars. I think the Oregon statute requires $200 to make it a felony offense. The distribution of the one firearm is – that is a stolen item. That's a felony under Oregon law. But that's the same passive possession, the same type of firearm that's precluded under the commentary. Now, yes, I raised the second sentence of Application Note 15 because of the government's 28J letter arguing that this new amendment applies. But in the – under the terms of the PLEA agreement, the government cannot argue for an upward departure, which Application Note in 15 requires. That's – so they cannot argue and ask for a remand or suggest that this Court send it back for a remand and let the district court consider an upward departure. But this Application Note – I forget who argued it. I think I mentioned it to Judge Gould or counsel. But I don't recall when I looked at the district court record that they – there was any discussion about the application of this particular note. Well, Application Note 15 was mentioned to the court, not the second sentence. We didn't discuss that. Is that the question? Yeah. Well, I – you know, I've read this a long time ago. Right. Yeah. The government argued it was the possession of the stolen items, the gun and the other items in the car before the district court that somehow emboldened him. But if you look at Polanco and you look at Rout in those cases, there was distinct conduct with the firearm, other – other actions beyond just the possession of it. My impression was that a lot of the briefing was addressing how distinct the conduct was. But I don't recall the briefing of both of you in the Ninth Circuit getting that much into Application Note 15. Maybe you – maybe Helen's brief mentioned it. Maybe the government didn't address it in the briefing. Yes. I did, in fact, mention it, and I brought that up to the district court also. I don't think either of your briefs addressed the precedents that we flagged in that order, which may be an apposite, I hope, or they may be persuasive. Let me just ask, do either or both of you want a chance to submit letter briefs commenting on those cases or not? I'd be happy to do that, Judge. Okay. If we think it would help, we'll issue a simple order and we'll let it be letter briefs. Okay. Thank you. Okay. Then unless there's anything further, I think we'll let the argument be closed. We thank – we thank Mr. Needham and Mr. Edmonds. And that case, Valenzuela itself, shall be submitted.
judges: Gould, Paez, Rawlinson